```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
 2                     HARRISBURG DIVISION

 3   UNITED STATES OF AMERICA,      ) CASE NO.
                    Plaintiff       ) 1:16-CR-00082-03-YK/MCC
 4           vs.                    )
     SCOTT LANE,                    )
 5                  Defendant       )
     _____ )
 6

 7            TRANSCRIPT OF CHANGE OF PLEA HEARING
          BEFORE THE HONORABLE MARTIN C. CARLSON
 8              UNITED STATES MAGISTRATE JUDGE
              11 JANUARY 2018 - 10:46 A.M.
 9

10   APPEARANCES:

11   For the Government:

12       Meredith A. Taylor, Esq., AUSA
         Austin Berry, Esq., AUSA
13       U.S. Attorney's Office
         Federal Building, 2nd Floor
14       228 Walnut Street
         Harrisburg, PA 17108
15       (717) 221-4482

16   For the Defendant:

17       Gerald A. Lord, Esq., AFPD
         Federal Public Defender's Office
18       330 Pine Street, Suite 302
         Williamsport, PA 17701
19       (570) 323-9314

20   Court Reporter:

21       Wesley J. Armstrong, RMR
         Official Court Reporter
22       U.S. Courthouse & Federal Building
         228 Walnut Street
23       Harrisburg, PA 17101
         (717) 542-5569

24

25       Proceedings recorded by machine shorthand; transcript
     produced by computer aided transcription.
```

U.S. District Court, Middle District of PA

**P R O C E E D I N G S**

THE COURT: Please be seated.  Good afternoon.

MS. TAYLOR: Good afternoon, Your Honor.

THE COURT: You're accompanied by someone?

MS. TAYLOR: I am, Your Honor.

MR. BERRY: Not exactly.

THE COURT: And who would it be that is joining you?

MS. TAYLOR: This is, Mr. Berry, Your Honor, my co-counsel in this case, and he is a trial attorney from the Department of Justice, the Child Exploitation and Obscenity Section.

THE COURT: Welcome to the Middle District of Pennsylvania.

MR. BERRY: Thank you, Your Honor.  Good to be with you.

THE COURT: Mr. Lord, hello.  How are you today?

MR. LORD: I'm well, Your Honor.  Pleased to see you.

THE COURT: Mr. Lane, good morning.

THE DEFENDANT: Good morning.

THE COURT: This is the case of United States versus Scott Lane.  It is this court's criminal number 1-16-CR-82.  Mr. Lane, I've been told that you signed a plea agreement today and that you intend to plead guilty to a number of charges in this indictment.  Is that your understanding of what you plan to do here today?

1          THE DEFENDANT: Yes.

2          THE COURT: Then you and I are beginning at the same

3     place, which is always a good way for a court proceeding to

4     begin.  This case, as you know, is assigned to District Judge

10:48AM 5     Yvette Kane, but Judge Kane has asked me to spend a little time

6     with you today discussing this case, discussing your rights in

7     connection with these charges, going over the plea agreement,

8     and making sure that yours is a voluntary plea, that has a

9     basis in fact, and contains all the elements of the offenses

10:48AM 10    charged against you.

11          To do that we'll have to ask you a number of

12    questions, but because I am not the judge who would be

13    sentencing you, that would be Judge Kane, before I could pose

14    these questions to you, you would have to consent, you'd have

10:48AM 15    to agree to allow me to ask you these questions.  Are you

16    willing to allow me to pose these questions to you to make sure

17    that yours is a voluntary plea, sir?

18          THE DEFENDANT: Yes.

19          THE COURT: Thank you, sir.  I appreciate that.  Now,

10:49AM 20    before I can recommend that Judge Kane accept any guilty plea

21    in this case, as I have noted for you it will be necessary for

22    me to ask you a series of questions to make sure that you have

23    a complete understanding of the charges, the penalties, the

24    plea agreement, and all the consequences of your plea, all to

10:49AM 25    ask questions to make sure that yours is a voluntary plea with

1   a basis in fact.

2           To do that I will be placing you under oath in just a

3   moment, and you should understand that there would be criminal

4   penalties for giving me a deliberate false answer under oath.

**10:49AM** 5   Do you understand that?

6           THE DEFENDANT: Yes.

7           THE COURT: Because your answers to the questions that

8   I will be posing to you are so very important, if I ask you a

9   question and if you don't understand my question, please ask me

**10:49AM** 10   to repeat it.  Okay?

11           THE DEFENDANT: Got it.

12           THE COURT: Very well. Because if I pose a question to

13   you and you answer it, I'm going to operate with the assumption

14   that you both understood my question and were confident that

**10:50AM** 15   you could give a truthful answer.  Is that fair?

16           THE DEFENDANT: Yes.

17           THE COURT: Moreover, if I ask you a question and you

18   think to yourself "I'd like to discuss that question with

19   Mr. Lord," just let know and we'll give you all the time you

**10:50AM** 20   need for that purpose.  Okay?

21           THE DEFENDANT: Okay.

22           THE COURT: Mr. Neary, would you administer the oath?

23           (The defendant was sworn by the courtroom deputy.)

24           EXAMINATION BY THE COURT:

**10:50AM** 25   **Q.**   Could you state your full name for the record?

1   **A.**   Scott Michael Lane.

2   **Q.**   And I take it you read, write, and converse in English?

3   **A.**   Yes.

4   **Q.**   How far did you go in school?

10:50AM   5   **A.**   A partial master's.

6   **Q.**   How old are you sir?

7   **A.**   Thirty-four.

8   **Q.**   Have you ever been treated for drug or alcohol addiction

9   or any form of mental illness?

10:50AM   10   **A.**   No.

11   **Q.**   And have you had any drugs or alcohol before coming here

12   today?

13   **A.**   No.

14   **Q.**   Are you taking any prescription medication that affects

10:51AM   15   your understanding of what we're doing here today?

16   **A.**   No.

17   **Q.**   And all things considered, are you feeling okay today?

18   **A.**   Yes.

19   **Q.**   And do you understand that today is the day set for a

10:51AM   20   guilty plea by you to a number of charges contained in the

21   superseding indictment in this case.  Do you understand that?

22   **A.**   Yes.

23   **Q.**   You've been represented by Mr. Lord, who is well known to

24   this court.  So far are you satisfied with the representation

10:51AM   25   you have received in this matter?

**A.**   Yes.

**Q.**   Now, Mr. Lane, you're entitled to a jury trial in this case, and by pleading guilty you'll be giving up forever that jury trial right.  So what I would like to do is spend a few minutes with you talking about the nature of that right so that you and I have a common understanding of what it is you've decided to give up.

You are entitled to a jury trial in this matter, and at a jury trial you, through counsel, would help select the twelve jurors who would hear the case.  At a trial and in any subsequent proceeding the government would have the responsibility of proving your guilt beyond a reasonable doubt. You would be presumed innocent.  Do you understand that?

**A.**   Yes.

**Q.**   And do you understand that the government's burden of proof of proof beyond a reasonable doubt is a burden of proof that the government would have to carry on each element of the offenses charged against you. Do you understand that?

**A.**   Yes.

**Q.**   And that any verdict returned by the jury would have to be unanimous.  That is, all twelve jurors would have to agree that the government carried it burden of proof beyond a reasonable doubt on all the elements of the offenses charged against you. Do you understand that?

**A.**   Yes.

**Q.**   In a trial setting, Mr. Lane, you would have the right to file pretrial motions seeking to suppress evidence or seeking to dismiss charges or seeking other relief, and indeed I believe given the nature of this plea agreement those motions have been filed in this chase, is that correct?

MR. LORD: Correct, Your Honor.

**Q.**   So you understand in a trial setting you have these rights?

**A.**   Yes.

**Q.**   And, furthermore, in a trial setting, at the time of trial you, through counsel, could cross examine government witnesses and challenge government evidence before the jury. Do you understand that?

**A.**   Yes.

**Q.**   In addition, at a trial you, through your counsel, could subpoena witnesses and evidence and present them as part of your defense in court.  Do you understand that?

**A.**   Yes.

**Q.**   And at a trial you could testify, providing your account of what happened here, although you could never be required to testify, and if you chose not to testify your silence could never be held against you. Do you understand that?

**A.**   Yes.

**Q.**   Do you understand that by pleading guilty subject only to the conditional aspects of this plea you will be giving up all

1  of these trial rights and your guilt will be established by

2  what you say here today and there will be no trial in this

3  matter?  Do you understand that?

4  **A.**   Yes.

10:53AM  5  **Q.**   With that understanding is it your desire to give up your

6  right to trial and to plead guilty to these offenses?

7  **A.**   Yes.

8  **Q.**   There is a plea agreement in this matter.  And, Mr. Neary,

9  I don't know if you have a copy?

10:54AM  10            COURTROOM DEPUTY: That's the only copy, Your Honor.

11  **Q.**   You've given me the only copy.  I'm going to turn the only

12  copy to you and I'm going to ask Mr. Neary to show you a copy

13  of that plea agreement, and we'll direct your attention to the

14  last pages of the agreement.  There is on the last page of the

10:54AM  15  agreement a heading that says, "Acknowledgment: I have read

16  this agreement and carefully reviewed every part of it with my

17  attorney.  I fully understand it and I voluntarily agree to

18  it."  And then there's a signature.  Whose signature is that?

19  **A.**   That is mine.

10:54AM  20  **Q.**   And did you in fact review the entire agreement with your

21  attorney before you signed this?

22  **A.**   Yes.

23  **Q.**   And did you feel like you had enough time to go over the

24  agreement with Mr. Lord before you signed it?

10:55AM  25  **A.**   Yes.

9

**Q.**   And did Mr. Lord answer every question that you might have
had regarding that agreement?

**A.**   Yes.

**Q.**   I'm going to ask the government to summarize for us the
plea agreement.  Understanding that of course every paragraph
in the agreement is important, I want you to focus on what the
government will provide to us as a summary of the agreement and
pay close attention, because when the government gets done
summarizing the agreement I'm going to ask if that's the
agreement you have with the United States.  Okay?

**A.**   Okay.

         MS. TAYLOR: Thank you.  Your Honor, in this written
plea agreement Mr. Lane is agreeing to plead to each of the
counts that he is charged with in the superseding indictment.
Paragraph 1 indicates that he will plead to Count 9 of the
superseding indictment, which charges him with sexual
exploitation of children, that is the production of child
pornography, and it indicates the maximums for that offense is
a period of imprisonment of thirty years, a fine of $250,000, a
lifetime of supervised release, and a special assessment of a
hundred dollars, and an additional assessment of $5,000.

         Paragraph 2 indicates that he'll plead guilty to
Count 10 of the superseding indictment, which charges criminal
conspiracy to produce child pornography.  The penalties are
thirty years, the maximum penalty are thirty years

imprisonment, a fine of $250,000, up to a lifetime of
supervised release, and the same special assessment of $5,100
and a fine of $250,000.

Paragraph 3 indicates that he will plead guilty to
Count 11 of the superseding indictment, which is criminal
conspiracy to receive and distribute child pornography.  The
maximum penalty for that offense is imprisonment up to twenty
years, a fine of $250,000, up to a lifetime of supervised
release, and assessments of $5,100.

Paragraph 4 indicates that he will plead guilty to
Count 12 of the superseding indictment, which charges receipt
and distribution of child pornography.  The maximum penalty for
that offense is imprisonment for up to twenty years, a fine of
$250,000, a lifetime of supervised release, up to a lifetime of
supervised release, and a special assessment of $5,100.

And paragraph 5 indicates that he will plead guilty
to Count 13 of the superseding indictment, which charges
criminal conspiracy to publish a notice or advertisement
seeking child pornography.  The maximum penalty for that
offense is listed in paragraph 5 and states that it is thirty
years imprisonment, a fine of $250,000, up to a lifetime of
supervised release, and assessments of $5,100.

And finally paragraph 6 indicates that Mr. Lane will
plead guilty to Count 14 of the superseding indictment, which
charges the substantive offense of publishing a notice or

advertisement seeking child pornography and lists the maximum

penalties for that offense as thirty years imprisonment, a fine

of $250,000, up to a lifetime of supervised release, and

assessments of $5,100.

10:58AM   Paragraph 8 goes on to list the mandatory minimum

sentences associated with each of those counts that Mr. Lane is

pleading guilty to and advises Mr. Lane that Counts 9, 10, 13,

and 14 carry mandatory minimum periods of imprisonment of

fifteen years for each of those counts, and Counts 11 and 12

10:58AM carry mandatory minimums of five years of imprisonment on each

count.

Paragraph 10 of the plea agreement indicates that

the maximum sentence for all the charges is a period of

imprisonment of up to 160 years of imprisonment, fines of

10:59AM $1,500,000, up to a lifetime of supervised release, and

assessments of $30,600.

Moving on to paragraph 17, Your Honor, the plea

agreement does state that if the defendant adequately

demonstrates acceptance of responsibility, the government will

10:59AM recommend a two level departure for that acceptance of

responsibility.

Paragraph 25 addresses specific restitution issues in

this case and states that the defendant agrees to make

restitution to Victim One in the amount of $50,000.

10:59AM And paragraph 26 indicates that the defendant agrees

U.S. District Court, Middle District of PA

to allow the Court to determine appropriate restitution for
other identifiable victims of images of child pornography.

Paragraph 31 states that of course the Court is not
bound by the terms of this agreement and that the Court is of
course free to sentence the defendant up to the maximum terms
of imprisonment that are listed in the agreement.

Paragraph 40 in the plea agreement does discuss the
sexual offender registration requirements that the defendant
will be subject to upon his release from prison.

And paragraph 41 lists the potential civil commitment
consequences of this plea agreement, that the defendant may be
determined to be a sexually dangerous person and may face civil
commitments following his imprisonment.

And finally, Your Honor, paragraph 44 on page 35 does
address that this plea agreement is a conditional plea, as the
Court has noted earlier, and that the defendant is reserving
the right to appeal the adverse determinations that were made
by the district court regarding the pretrial motions that have
been filed, that were previously filed and ruled on by Judge
Kane.

THE COURT: Very well.  Mr. Lord, is that a fair
summary of the plea agreement?

MR. LORD: It is, Your Honor.  And just to amplify
paragraph 44, Your Honor, my client is not waiving any right to
file an appeal from the sentence that is imposed.  So he hasn't

waived his appeal rights in that regard.

THE COURT: In looking at that paragraph I did not see any waiver of appellate right.  I saw the conditional preservation of appeal rights relating to suppression issues. So then as I understand it this defendant, Mr. Lane, preserves the right to appeal certain adverse rulings on pretrial motions and would preserve the right to appeal any sentence.  Do the parties agree that that is the nature of the appellate rights preserved under this agreement?

MR. LORD: Yes, Your Honor.

MS. TAYLOR: Yes, Your Honor.

THE COURT: Very well.

BY THE COURT:

**Q.**   Mr. Lane, is that a fair summary of the agreement you have with the United States?

**A.**   Yes.

**Q.**   Other than the terms that are set forth in the written plea agreement and those that have been outlined and discussed here today in open court, has anyone promised you or offered you anything to get you to plead guilty?

**A.**   No.

**Q.**   Has anyone threatened you or any member of your family or anyone close to you to get you to plead guilty?

**A.**   No.

**Q.**   Can I rest assured that you're pleading guilty to those

offenses because you are in fact guilty of this crime?

**A.**   Yes.

**Q.**   And on that score do you understand that no one can

guarantee what sentence Judge Kane will impose in this case?

Do you understand that?

**A.**   Yes.

**Q.**   There are recommendations in the plea agreement relating

to things such as acceptance of responsibility, but those are

recommendations only and they're not binding on Judge Kane.

Do you understand that?

**A.**   Yes.

**Q.**   And do you understand that you'll be entering a guilty

plea to a number of felony offenses, and as a result you may

lose certain civil rights such as the right to vote, the right

to hold public office, the right to serve on a jury, the right

to possess a firearm, the right to obtain certain federal

benefits, and the right to obtain certain professional

licenses. Do you understand you could lose those by virtue of

your conviction on these charges?

**A.**   Yes.

**Q.**   Are you a United States citizen, Mr. Lane?

**A.**   Yes.

**Q.**   I'm not doubting that in the least, but I'm obliged

whenever someone pleads guilty in front of me to a serious

charge, like the charges set forth in this indictment, to

notify you that if you were not a citizen, one consequence of a

guilty plea is that you could be deported from the United

States following service of any sentence.  Do you understand

that?

**A.**   Yes.

**Q.**   And I want to spend a moment or two just going over a

matter that was highlighted by Ms. Taylor and making sure you

and I have a common understanding of what the penalties are for

these various offenses.  Counts 9 and 10 charge you in Count 9

with production of child pornography, and in Count 10 with

conspiracy to produce child pornography, in violation of Title

18 of the U.S. Code, Section 2251(a) and 2251(e).

Each of these offenses in the event of a conviction

would carry a mandatory minimum fifteen year jail sentence, and

up to thirty years in prison.  And each of these offenses would

have a maximum fine of $250,000.  Each of these offenses would

also entail a term of supervised release that could be as long

as your natural life, and that term of supervised release would

be served after any period of imprisonment, and then each of

these offenses carry special assessments totaling $5,100.  Do

you understand that?

**A.**   Yes.

**Q.**   Counts 11 and 12 of the indictment charge you with

conspiring to receive and distribute child pornography and

receipt and distribution of child pornography, in violation of

Title 18 of the U.S. Code, Section 2252(a)(2).  Each of these
offenses carries a mandatory five years in prison, and up to
twenty years in prison.  Each of these offenses also carry a
maximum fine of $250,000.  Moreover, each of these offenses is
**11:05AM** punishable by a lifetime term of supervised release, and each
of these offenses also carry a special assessment of $5,100.
Do you understand that?

**A.**    Yes.

**Q.**    Counts 13 and 14 of the superseding indictment then charge
**11:06AM** you with conspiring to publish a notice or advertisement
seeking child pornography and then causing the publication of
such a notice seeking child pornography.  These charges are
brought against you under Title 18 of the U.S. Code, Section
2251(d) and (e), and each of these offenses carries a mandatory
**11:06AM** fifteen years in prison and up to thirty years in prison, fines
of up to $250,000, a lifetime term of supervised release, and
an assessment of $5,100.  Do you understand that?

**A.**    Yes.

**Q.**    So for our purposes here today it is very important that
**11:06AM** you and I recognize that the total combined maximum penalty you
could face would be as much as 160 years in prison, fines of
$1,500,000, a lifetime term of supervised release, and special
assessments totaling $30,600.  Do you understand that?

**A.**    Yes.

**11:07AM** **Q.**    And do you understand that that term of supervised release

1  that I mentioned to you is served after any period of

2  incarceration?  Do you understand that?

3  **A.**   Yes.

4  **Q.**   And do you understand that if you were to violate your

11:07AM 5  supervised release you could be returned to jail?

6  **A.**   Yes.

7  **Q.**   In addition, the plea agreement notes several other

8  matters for us that I want to specifically discuss with you

9  just briefly here today.  First, the plea agreement notes that

11:07AM 10 one of the consequences of a conviction in this matter is that

11 you would have a victim restitution obligation, and in

12 paragraphs 25 and 26 of the plea agreement you've indicated

13 that you agree to a victim restitution obligation for $50,000

14 for one victim in this case, and that you acknowledge as to

11:08AM 15 other victims that the Court may, in its discretion, order you

16 to make restitution.  Do you understand, sir, that then as part

17 of any sentence in this case you will have restitution

18 obligations of at least $50,000 and perhaps more?  Do you

19 understand that?

11:08AM 20 **A.**   Yes.

21 **Q.**   In addition the plea agreement in paragraph 40 notes for

22 us that there are sex offender registration requirements under

23 federal and state law, and that upon completion of any sentence

24 you would be required to register as a sex offender and that if

11:08AM 25 you were not to register or update the registration as required

by law, that you could commit another federal offense and you could be incarcerated again for a new federal offense.  Do you understand that?

**A.**   Yes.

**Q.**   In addition, paragraph 41 of the people notes for us one other potential consequence of a guilty plea in this case, which is that federal law provides for the civil commitment for individuals who are deemed to be sexually dangerous offenders, and in the plea agreement you acknowledge that one consequence of your plea is that at some time in the future you may face such civil commitment proceedings.  No one can predict today whether that will happen or when it might happen, but it is important for you to understand that that is one other potential consequence of a plea to these charges. Do you understand that?

**A.**   Yes.

**Q.**   In addition, in terms of discussing these criminal penalties in this case do you understand that there are sentencing guidelines that Judge Kane must consider and may follow when it comes time to sentencing you?

**A.**   Yes.

**Q.**   And have you and Mr. Lord or anyone else discussed those guidelines and how they might work in your case?

**A.**   Yes.

**Q.**   And has Mr. Lord or anyone provided you with an estimate

U.S. District Court, Middle District of PA

1  of those guidelines?

2  **A.**   Yes.

3  **Q.**   I would fully expect counsel to provide you such an

4  estimate as part of due diligence in this process, but I want

11:10AM 5  to note something for you very important about any estimate

6  that you receive.  Any estimate you receive is just that, an

7  estimate, and it is not binding on the Court, which will have

8  to make its own findings regarding the guidelines.  So if you

9  have received an estimate and if the Court determines the

11:10AM 10  guidelines to be different than that estimate, you'll still be

11  bound by this plea. Do you understand that?

12  **A.**   Yes.

13  **Q.**   Do you also understand that a prior conviction could

14  affect your sentencing guidelines?

11:10AM 15  **A.**   Yes.

16  **Q.**   Now, what will happen in your case if your plea is

17  accepted, Mr. Lane, is that a presentence report will be

18  prepared.  That report will provide a complete background on

19  your social history and criminal history and the like.  It will

11:11AM 20  also describe your alleged role in this offense and it will

21  provide a tentative guideline calculation.

22        Mr. Lane, you will see that report in draft a long

23  with Mr. Lord and government counsel well before Judge Kane

24  ever sees the report, and if there is anything in that report

11:11AM 25  that you think is wrong, you have the right to object to it.

And objections that cannot be resolved by the parties will be
resolved by Judge Kane at a hearing, where typically the
government will have to prove what's in that report.  Mr. Lane,
this is a process that is set up to protect your rights, sir,
but if at the end of that process the guidelines turn out to be
different or higher than you expected, you'll still be bound by
this guilty plea.  Do you understand that?

**A.**   Yes.

**Q.**   And of course, Mr. Lane, in no instance can the guidelines
or any sentence exceed the maximums that we discussed here
today.  Do you understand this?

**A.**   Yes.

**Q.**   And do you understand that one consequence of a guilty
plea may be that you will be required to provide a DNA sample
to the government.  Do you understand that?

**A.**   Yes.

**Q.**   Do you also understand that these guidelines that we're
talking about are advisory only.  So in some instances the
Court has the right to impose a sentence that departs from the
guidelines.  It can be either above or below the guidelines.
Do you understand that?

**A.**   Yes.

**Q.**   Of course in no instance can the Court impose a sentence
below the mandatory minimums.  Do you understand that?

**A.**   Yes.

1    **Q.**   And do you understand that there is no parole in the

2    federal system, so if you're sentenced to a term of months in

3    prison, you will have to serve that period of time and you

4    cannot be released early on parole.  Do you understand that?

**11:12AM** 5   **A.**   Yes.

6    **Q.**   The plea agreement also has some provisions in it relating

7    to forfeiture of certain equipment involved, allegedly involved

8    in this conduct.  Do you understand that as part of your plea

9    agreement in this matter you have agreed to cooperate in the

**11:13AM** 10   forfeiture of certain assets and equipment?

11   **A.**   Yes.

12   **Q.**   And that that is a material aspect of your plea.  Do you

13   understand that?

14   **A.**   Yes.

**11:13AM** 15   **Q.**   Moreover, directing your attention to paragraph 44 of the

16   plea agreement, as I understand it this is a conditional plea.

17   You have agreed to plead guilty while preserving your right to

18   seek appellate review of pretrial rulings made by the district

19   court on suppression motions.  Do you understand that while you

**11:13AM** 20   are pleading guilty, you are preserving this appellate right?

21   **A.**   Yes.

22   **Q.**   And that should you prevail on appeal you would be

23   entitled to withdraw your guilty plea. Do you understand that?

24   **A.**   Yes.

**11:14AM** 25   **Q.**   It is also my understanding that you have not otherwise

1   waived any of the appellate rights you may have relating to a

2   sentence in this case.  Is that your understanding as well,

3   sir?

4   **A.**   Yes.

11:14AM  5   **Q.**   Then with everything we have gone over at this time

6   relating to the plea agreement, the nature of the rights that

7   you have in connection with this case and the nature of the

8   charges, is it still your desire to plead guilty?

9   **A.**   Yes.

11:14AM  10   **Q.**   And are you pleading guilty because you are in fact guilty

11   of these charges?

12   **A.**   Yes.

13   **Q.**   Do you have any questions of me regarding anything of

14   matters we've gone over?

11:14AM  15   **A.**   No.

16        THE COURT: Then, counsel, before I turn to the

17   factual basis for the plea, are there any other areas that

18   counsel would ask me to inquire into with Mr. Lane?  Anything

19   from the United States?

11:14AM  20        MS. TAYLOR: No, Your Honor.

21        THE COURT: And Mr. Lord?

22        MR. LORD: Nothing from the defense, Your Honor.

23        THE COURT: Very well.

24        MR. LORD: You covered everything thoroughly.

11:14AM  25        THE COURT: Well, this is an important event for

1  Mr. Lane and I wanted to make sure that we covered everything

2  thoroughly in that regard.  Mr. Lane, as we have noted, you're

3  charged in this indictment with charges relating to the

4  production of child pornography, the receipt and distribution

**11:15AM** 5  of child pornography and publishing notices seeking child

6  pornography.

7        Those are the charges, substantive and conspiracy

8  charges set forth in Counts 9 through 14 of the superseding

9  indictment.  I'm going to ask the United States to tell us what

**11:15AM** 10  evidence it would have presented at a trial in this case, and

11  I'll ask you to pay very close attention, because when

12  government counsel gets done reciting the facts, I'm going to

13  ask if that's what you did, and then I'll ask how you plead.

14  Ms. Taylor?

**11:15AM** 15        MS. TAYLOR: Your Honor, we have prepared a written

16  factual basis in this case which we have signed, as well as the

17  defendant and his attorney.  I believe we submitted the

18  original to the Court, but with the Court's permission I would

19  ask if Mr. Berry could put the factual basis on the record.

**11:16AM** 20        BY THE COURT:

21  **Q.**   And I'd be delighted to do that.  Let me though just note

22  we have received something called a factual basis, Mr. Lane.

23  And did you have a chance to read that factual basis over?

24  **A.**   Yes.

**11:16AM** 25  **Q.**   And did you and counsel have a chance to carefully review

1  that factual basis for accuracy?

2  **A.**   Yes.

3  **Q.**   And have any concerns or questions you had about the

4  accuracy of this factual basis been fully resolved to your

11:16AM  5  satisfaction?

6  **A.**   Yes.

7  **Q.**   And then you have signed an acknowledgment page at the end

8  of this factual, have you not, sir?

9  **A.**   Yes.

11:16AM  10  **Q.**   And in that do you acknowledge, sir, that the factual

11  basis that is set forth in this document which will be filed as

12  part of the record in this case is a full complete and accurate

13  account of your involvement in this conduct?

14  **A.**   Yes.

11:17AM  15       THE COURT: Very well.  And having said that,

16  Mr. Berry, I'll be pleased to turn to you and have you recite

17  the factual basis for us.

18       MR. BERRY: Sure, Your Honor.  Is it your practice

19  would you like me to read it verbatim or may I summarize the

11:17AM  20  facts as we go through them?

21       THE COURT: My practice is to defer to your practice

22  and preference.  What I would note is Mr. Lane has just told me

23  upon his oath that he's read through the entire document and

24  that he's carefully reviewed it and that every aspect of it is

11:17AM  25  full, complete, and accurate.  Is that right, Mr. Lane?

1      THE DEFENDANT: Yes.

2      THE COURT: That being the case, a summary may suffice.

3  But I leave that to your discretion.

4      MR. BERRY: Then that's what I'll do, Your Honor.

5      THE COURT: Very well.

6      MR. BERRY: Just for the record and so that, I know

7  Your Honor has taken pleas in this case I think from some of

8  the other defendants, this is basically the same factual basis

9  that has been put in the other defendants' cases with regards

10  to paragraphs 1 through 10.

11      THE COURT: Yes, the description of Application A and

12  its operation and the like.

13      MR. BERRY: So basically what 1 through 10 do is

14  summarize what Application A is, which is the moniker that we

15  had given to video conferencing platform that is the subject of

16  this case, and we have called it that because it's still

17  subject to an ongoing undercover operation, and that it

18  basically describes that platform, how it works and how it

19  operates, and then it goes to July 22nd, 2015 when a Toronto

20  undercover was working on that application platform and

21  observed an event in which a six-year-old child was sexually

22  abused by defendant Augusta, who resided here in the Middle

23  District of Pennsylvania.

24      Paragraph 10, I believe paragraph 10 includes several

25  pages of direct verbatim chat logs from that prerecorded and

live event that occurred on July 22nd, 2015.  After paragraph
10, starting at paragraph 11 it moves to more specific facts
related to this particular defendant Scott lane, and in
paragraph 11 it talks about how on April 12th, 2016 Homeland
Security executed a search warrant at Mr. Lane's residence in
New York and interviewed him there, and in that interview Mr.
Lane made some statements about how he didn't comfortable
discussing what he had seen on there and that he said that, you
know, when asked whether he didn't care about the little boy,
he said, "That's not true, I can't help you.  I'm being selfish
and I don't know the law," but that now Mr. Lane admits that in
fact he did observe what occurred on July 22nd, 2015 with the
six-year-old boy being sexually abused by Augusta.

          The factual basis then moves on and talks about some
of the specifics with regards to Lane's logging in to this
Application A room and that he was there for approximately
fifty-three minutes on July 22nd, 2015, and that he observed
this abuse occurring from approximately 1900 Eastern Time to
1922.

          In addition, the factual basis in paragraph 14 states
that defendant Lane utilized the alias of *NYCperv*, and that was
the user name that we would see in the chat logs up above in
paragraph 10 detailing what was said by whom, and *NYCperv*'s
comment's there would be defendant Lane's comments, which
include some of the comments he used, which was, "Make out with

him, fuck him, and show more face," that we have included in
the factual basis.

In addition there were private messages that
defendant Lane sent to defendant Augusta on the application
platform that included additional requests and questions to
Augusta about his sexual abuse of the six-year-old child.

Paragraph 15 moves on to the forensic analysis of
defendant Augusta's -- defendant Lane's devices, and talks
about the different files that were located on his device that
were related to child pornography, including file titles such
as "SixYO Enjoy Dad's Cock," another video called "Andy 4YO
Anal," and another video called "Toddler Rape."  In addition
there were other videos that the forensic analysis on his
device revealed that depicted a child under the age of two
being sodomized by an adult male.

Paragraphs 16, 17, 18, 19, and 20, and 21, are broken
down by specific counts and incorporate all of the facts that
were included in paragraphs 1 through 15.  So those are
basically effectively imported into each of those paragraphs
and then go on to include additional facts that are specific to
those individual charges.

For example, Count 16 -- paragraph 16 talking about
Count 9 references the fact that defendant Lane admits that he
and other codefendants assisted codefendant Augusta in the
production of those sexually explicit image of Victim One by

their comments and continuation in that room and encouragement

of him to abuse the boy.

Paragraph 17 refers to Count 10 and further states

that Lane acknowledges that he entered into an agreement, part

11:22AM of the conspiracy requirement, by frequenting the same rooms on

Application A where it was known that people interested in

viewing such images and transmissions of sexual abuse would

congregate, that it was not the only time that he had ever been

there effectively is what that says.

11:23AM Paragraph 18, Count 11, discusses that during the

time frame of the conspiracy Lane and other codefendants agreed

to receive and distribute such sexually explicit images of

children by frequenting the same rooms and expressly requesting

that someone play such videos.

11:23AM Paragraph 19, Count 12, additionally adds, or adds

that Lane and other defendants assisted each other by

congregating in these rooms, often times with their cams on in

an effort to create what appeared to be a trusted environment

so that everyone would share such videos.

11:23AM Paragraph 20 refers to Count 13 and discusses

specific comments and requests that people made, such as his

codefendant Marquez, who asked if anyone had any hot baby vids

and other defendants' comments and requests. Specifically Lane

commented prior to the live event, "Is anyone showing vids?"

11:24AM And then he also made a bunch of comments during the live event

that are listed in paragraph 10.  And then in addition to that

after the live event he made additional comments further

encouraging people to produce or stream videos and again

requesting, "Anyone have vids?"

Paragraph 21, Count 14, discusses the substantive

advertising charge and again talks about the request or the

comments made by Lane on July 22nd about, "Anyone showing

vids?" and "Let's see some fucking."  In addition the forensic

analysis of Lane's devices, including his I-Pad and I-Phone,

show that as far back as October of 2014 he was encouraging

other users to "Go in your boy's room, let's jerk off there,"

and then he said, told another user, "I definitely got porn and

I can share, and money to pay you, fly you out here to fuck me

and nephew . "

In addition, and finally, on one occasion messaging

an individual and said, "Is it uber bad if I say I want to see

you pound a fifteen year old?"  And that is the end of the

factual basis summary, Your Honor.

THE COURT: Mr. Lane, you've had a chance to read the

complete factual basis and have heard the summary here that's

been presented in open court.  Is there anything in that

factual basis, written or summarized here in open court, that

you disagree with, sir?

MR. LORD: Your Honor, if I may interrupt?  My client

did whisper to me during the presentation, I was wondering if I

1 could have a few minutes to talk to him.

2          THE COURT: Oh, certainly.  That would be fine.  Why

3 don't you do that?

4          MR. LORD: Thank you.

11:26AM 5          THE COURT: You bet. Why don't you just have a seat,

6 take your time.

7          MR. LORD: Thank you, Your Honor.

8          (Discussion held off the record.)

9          MR. LORD: We're prepared to come forward, Your Honor.

11:28AM 10          THE COURT: Why don't we come on forward then.

11          MR. LORD: Kevin, do you want the plea agreement back?

12          THE COURT: Mr. Lane, I appreciate you doing exactly

13 what I had asked you to do earlier in the proceeding.  That is

14 take a moment and chat with your counsel if there was any

11:28AM 15 question or concern that you might have. Mr. Lord, was there

16 anything we need to address?

17          MR. LORD: No, Your Honor.

18          BY THE COURT:

19 **Q.**   Then let me just ask you again, Mr. Lane, with respect to

11:28AM 20 the factual basis of the plea that's been outlined here in

21 court and that is contained in the written document that you

22 have signed, am I correct in my understanding that you have

23 carefully reviewed that written document and that it is full,

24 complete, and accurate, is that correct?

11:28AM 25 **A.**   Yes.

**Q.**   And do you have any quarrel with anything set forth in

that factual basis or anything that was recited here in open

court summarizing that factual basis?

**A.**   No.

11:28AM   **Q.**   Very well. Then with respect to the charges set forth in

Counts 9, 10, 11, 12, 13, and 14 of the superseding indictment,

which charge you with production of child pornography,

conspiracy to produce child pornography, conspiracy to receive

and district child pornography, receipt and distribution of

11:29AM   child pornography, conspiracy to publish a notice seeking child

pornography, and publication of a notice seeking child

pornography, how do you plead, sir?  Are you guilty or not

guilty?

**A.**   Guilty.

11:29AM          THE COURT: Very well.  I make the following findings

and will recommend that Judge Kane make these findings as well.

First, I find that Mr. Lane is fully competent and capable of

entering an informed guilty plea to these charges.  I find that

he is aware of the nature of the charges and the consequences

11:29AM   of his guilty pleas.

               I also find that his pleas of guilty to these charges

are knowing and voluntary, and the pleas are supported by an

independent basis in fact, containing each of the essential

elements of the offenses charged.  I also find, Mr. Lane, that

11:30AM   no promises have been made to you beyond those set forth in the

plea agreement, and that no one has threatened you in any way

to induce the entry of a guilty plea in this case.

Therefore I find and will recommend that Judge Kane

find that Mr. Lane should be adjudged guilty of Counts 9, 10,

11, 12, 13, and 14, and that this matter should proceed to

sentencing proceedings.  On that score, Mr. Lane, I had

mentioned to you that you'll see a presentence report in draft

before Judge Kane ever does.  Will the probation office be able

to provide Mr. Lane with a copy of that report by March 8th?

PROBATION OFFICER: Yes, Your Honor.

THE COURT: Then I'm going to order that a copy be

provided to you, sir, by March 8 so that you and your counsel

and government counsel can review the report for accuracy.

Judge Kane will then set this matter down for sentencing

sometime on or about April 19, but you'll get a separate notice

to that effect.  Is there anything further that we can do here

today on behalf of the United States?

MS. TAYLOR: Your Honor, there was one, one other

issue I wanted to bring to the Court's attention.  On the plea

agreement there was one error in the caption which I did not

catch before we handed it up to the Court.  The plea agreement

itself has on the caption that it's requesting that it be filed

under seal, and we actually did not include a motion for it to

be filed under seal and that annotation should have been taken

off.  But it's not being filed under seal.

1          THE COURT: And absent a motion to seal we would not

2   otherwise seal the plea agreement.  I appreciate that notation.

3   Government counsel is just noting for us, Mr. Lane, that this

4   plea agreement, being a public record and a public proceeding,

11:32AM   5   will be filed on the open record and won't be sealed in any

6   way. Do you understand that?

7          THE DEFENDANT: Yes.

8          THE COURT: Fair enough.  Is there anything further on

9   behalf of the defendant, Mr. Lord?

11:32AM   10          MR. LORD: No, Your Honor.

11          THE COURT: We'll stand in recess.  Counsel, can I see

12   you briefly at side bar?

13          (Hearing concluded at 11:32 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF OFFICIAL COURT REPORTER**


**USA vs. Scott Lane**

**1:16-CR-00082-MCC/YK-03**

**Change of Plea Hearing**

**11 January 2018**


I, Wesley J. Armstrong, Federal Official Court Reporter, in and for the United States District Court for the Middle District of Pennsylvania, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.


Dated this 14th day of May 2021




/s/ Wesley J. Armstrong

_____

Wesley J. Armstrong

Registered Merit Reporter

**U.S. District Court, Middle District of PA**